IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

TAMARA PERRY,                          *

    Plaintiff,                     *

vs.                                    *          CASE NO. 3:08-CV-43(CDL)

GREENE COUNTY, GEORGIA, a              *
Political Subdivision of the
State of Georgia, *et al.*,            *

    Defendants.                    *

_____        *

O R D E R

    In this action, Plaintiff alleges that Defendants violated her federal and state constitutional rights when they stopped her vehicle and arrested her without probable cause, detained her using excessive force, and searched her vehicle without a search warrant. Defendants move for summary judgment as to all of Plaintiff's claims. Although Plaintiff cites various statutory and constitutional provisions in support of her claims, the resolution of Defendants' motion depends upon whether arguable probable cause existed for the arrest of Plaintiff, whether the arresting officers used reasonable force in detaining her, and whether the search of her vehicle was an inventory search incident to her arrest. The Court finds that arguable probable cause existed for the arrest, that the officers used reasonable force under the circumstances, and that the officers conducted a lawful inventory search of her vehicle. Accordingly,

Defendants' Motion for Summary Judgment (Doc. 17) is granted as explained more fully in the following discussion.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  When a movant moves for summary judgment, it is the movant's burden to show that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  To meet this burden, the movant may point to "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks omitted).  In the alternative, the movant may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  A movant is not required to come forth with evidence negating the nonmovant's claim. *See id.*

Once a movant meets its burden, the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact. *See id.* at 324.  The nonmoving party must "go beyond the pleadings," *id.*, and point to "specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324.  A nonmovant is not required to produce evidence in a form that would be

2

admissible at trial, but he or she must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.* The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmovant and drawing all justifiable inferences in his or her favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmovant-there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

While the facts must be viewed in the light most favorable to Plaintiff, the record in this case contains two DVD recordings of the traffic stop and arrest of Plaintiff, as well as the search of Plaintiff's vehicle. (*See generally* Ex. B to Defs.' Mot. for Summ. J. [hereinafter Defs.' Mot.], Fuller Dash-Cam Video, Aug. 2, 2007; Ex. C to Defs.' Mot., Englett Dash-Cam Video, Aug. 2, 2007.) When

3

such recordings clearly contradict assertions made by the parties, a court may not rely on any facts "blatantly contradicted by the record, so that no reasonable jury could believe it," and shall rely instead upon the representations in the recordings. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

FACTUAL BACKGROUND

## I.   The Pursuit

On August 2, 2007, at approximately 12:40 p.m., Plaintiff was driving her 1998 Nissan Maxima, which had tinted windows and an untinted but dirty plastic cover over the tag, eastbound on I-20 in Greene County, Georgia. (Pl.'s Dep. 22:4-13, 31:14-19, 50:13-51:5, Oct. 22, 2008; *see* Compl. ¶ 21.)  As Plaintiff passed Defendant Corporal Mark Fuller, who was parked in his patrol car in the median, Corporal Fuller observed the window tinting and plastic tag cover on Plaintiff's vehicle.  He decided to pursue Plaintiff.  (Fuller Dep. 14:21-15:1, Mar. 27, 2009; *see* Ex. A to Defs.' Mot., Incident Report at 0002, Aug. 2, 2007.)  Corporal Fuller pulled into the eastbound lane of I-20 and accelerated until he caught up with Plaintiff. (Fuller Dep. 15:20-24; *see* Incident Report at 0002.)  Corporal Fuller pulled next to Plaintiff's vehicle in order to read Plaintiff's tag number.  Explaining that he followed his typical procedure, Corporal Fuller testified,

> My normal—normal practice is I will—I never get—try not to
> get behind the vehicle initially.  Some people get scared
> and they'll slam on the brakes and—you know, while I'm
> trying to check the tags.  So I get in the opposite lane of

4

travel, I come up behind them, and try to read the tag. I
call out the tag. For officer safety on the interstate, we
always check the tag first to make sure the vehicle wasn't
stolen. Because of the tinted tag cover, I think I had to
get up a little closer to the vehicle.

(Fuller Dep. 16:2-11.) Corporal Fuller reported Plaintiff's tag
number to Greene County 911, and the tag number "c[ame] back not
stolen." (Fuller Dep. 16:13.) After confirming that the vehicle was
not listed as stolen, Corporal Fuller activated his emergency lights
between highway markers 132 and 133. (Incident Report at 0002; *see*
Fuller Dash-Cam Video at 12:35:20.)

Plaintiff failed to pull over in response to Corporal Fuller's
emergency lights. She explained her reason for not pulling over as
follows: "I didn't refuse to pull over. I had no idea what [Corporal
Fuller] was doing. [Corporal Fuller] started in the left lane and
came in the right lane. People were speeding by. So I didn't know
what [Corporal Fuller] was doing." (Pl.'s Dep. 37:13-16.) In order
to make sure Plaintiff observed his vehicle, Corporal Fuller
straddled the lane divider and positioned his vehicle so that it
would be directly in view of Plaintiff's left door mirror. (Fuller
Dash-Cam Video at 12:38:39; *see also* Incident Report at 0002.)

When Plaintiff failed to pull over in response to Corporal
Fuller, Greene County 911 dispatched other deputies to assist
Corporal Fuller in his pursuit of Plaintiff. (Englett Dep. 15:22-
16:24, Sept. 23, 2008.) Approximately three miles and four minutes
after Corporal Fuller initiated his emergency lights, Defendant

Deputy Paul Englett arrived to assist with the pursuit. (*See* Pl.'s Dep. 34:18-35:10.) Plaintiff finally pulled over. (Pl.'s Dep. 35:11-36:7; *see id.* at 35:19 ("[Deputy Englett] ran me off the road."); Englett Dep. 20:13-17 ("I can't remember specifically what I did next, but I just know I definitely got in front of her vehicle. So she surely would have known to stop. There wouldn't be no excuse for her not stopping."); *see also* Englett Dash-Cam Video at 12:44:17-12:44:25.)

## II.   The Stop

At the time of the stop, neither Deputy Englett nor Corporal Fuller knew why Plaintiff failed to stop earlier. As explained by Corporal Fuller, "As soon as she stopped, I got out of my car, drew my service weapon. I had no idea why she didn't stop. She may not have saw (sic) me, may have been scared, or she may have had 40 pounds of marijuana and a dead body in the trunk." (Fuller Dep. 21:19-23.) Deputy Englett added that, "[O]fficer safety kicks in then. You don't want to get shot at. So my action was to get out from in front of the car, you know, to get shot at or prevent from getting ran over, both from her vehicle and also other vehicles on the interstate." (Englett Dep. 20:23-21-3.)

According to Plaintiff, both Corporal Fuller and Deputy Englett drew their weapons, used inappropriate language, and ordered her to get out of her vehicle and lie face down on the ground. (Pl.'s Dep. 38:24-41:3; *see* Fuller Dash-Cam Video at 12:39:25-12:39:57.) While

6

lying on her stomach, she was handcuffed by Corporal Fuller.  (Pl.'s Dep. 41:5-18; *see* Fuller Dash-Cam Video at 12:40:00.)   After handcuffing Plaintiff, Corporal Fuller helped her up, using both hands to move Plaintiff from her stomach to a seated position, and then from a seated position to her feet.  (Fuller Dash-Cam Video at 12:40:14-12:40:38.)  Plaintiff maintains that Corporal Fuller "used enough force to leave Plaintiff traumatized, bruised and sore." (Pl.'s Statement of Material Facts to Which There Exists Genuine Issues to be Tried ¶ 6.)   According to Plaintiff, the handcuffs caused bruising and swelling on her wrists.  (Pl.'s Dep. 47:25-49:22; *see* Ex. D to Pl.'s Dep.)  However, Plaintiff failed to point to any evidence in the record that would lead a reasonable factfinder to conclude that she made any complaints on the day of her arrest to any of the officers about the handcuffs.

### III. The Vehicle Search

Since Plaintiff was being taken into custody, it was necessary to impound her vehicle.   Therefore, the deputies conducted an inventory search of the vehicle,[1] which included the contents of

---

[1]Greene County Sheriff's Enforcement Policy Manual provides in pertinent part:

VIII. INVENTORY OF VEHICLES

A.   <u>SEIZURE OF VEHICLE</u>:   For an inventory of a vehicle to be valid, the police custody of the vehicle must be lawful.   An inventory of a vehicle is not a search.   An inventory is a departmental policy designed to insure that valuable possessions

Plaintiff's luggage in the trunk.[2]   (Fuller Dep. 25:20-26:11; *see* Englett Dep. 25:5-26:17; *see also* Fuller Dash-Cam Video at 12:40:40-12:58:11.)  As explained by Corporal Fuller,

> After . . . [Plaintiff's] license was found to be valid, I—in my mind, I knew she was—didn't stop for a reason so it was my job to find out why she didn't, and that just came from my knowledge, training, and experience for people who just don't stop for me on the interstate.  And we always incorporate that into the vehicle inventory for the wrecker services to—at the end of it so we don't have to do it twice.

(Fuller Dep. 26:4-11; *see id.* at 31:1-4 ("My normal practice is to—to go ahead and do a vehicle search . . . slash, wrecker inventory.");

---

|  |  | within a vehicle under police custody are accounted for.  Any contraband which is found inadvertently during an inventory may be seized. |
|---|---|---|
| B. | JUSTIFICATION | The inventory must be conducted only to fulfill the police care taking function of securing the contents of the vehicle. |
| C. | NATURE OF INVENTORY | The search must be a routine part of standard police procedures for impounding vehicles, rather than a pretext for an investigatory search, and may not extend to locked luggage or other similar repositories of personal effects. It shall be standard operating procedure for Greene County Sheriff's Office officers to inventory all impounded vehicles. |

(Ex. A to Pl.'s Br. in Supp. of her Resp. to Defs.' Mot. for Summ. J. [hereinafter Pl.'s Resp.], Greene County Sheriff's Office Enforcement Policy Manual, Search & Seizure at 3 [hereinafter Search & Seizure].)

[2]Under the applicable policy, "[c]losed containers may be opened" during a personal effects inventory.  (Search & Seizure at 4.)

Englett Dep. 25:12-13 ("So if the vehicle is getting impounded, it gets searched regardless.").) Plaintiff did not consent to the search of her vehicle. (Englett Dep. 25:5-10.) The vehicle was towed and subsequently stored in an impoundment lot. (Incident Report at 0002; *see* Pl.'s Dep. 46:7-18.).

After Plaintiff was taken into custody, Plaintiff was charged with violating O.C.G.A. § 40-2-41 (illegal tag cover) and O.C.G.A. § 40-6-74 (failure to yield to emergency vehicle). (Incident Report at 0003, 0012-13; Pl.'s Dep. 50:1-3; *see* Ex. B to Pl.'s Resp., Aff. of Pl.'s Resp. to Defs.' Mot. for Summ. J. ¶ 8, July 14, 2008.) These charges are still pending. (Pl.'s Dep. 49:23-25.)

DISCUSSION

## I.   Plaintiff's Federal Claims

Although Plaintiff cites to numerous constitutional and statutory provisions in support of her claims against Defendants in their individual and official capacities, it is clear that her federal claims must be evaluated using the Fourth Amendment analytical framework for alleged unreasonable searches and seizures.[3] To prevail on her Fourth Amendment claims brought pursuant to 42 U.S.C. § 1983, Plaintiff must prove that Defendants, acting under color of state law, deprived her of her right to be free of unreasonable searches and seizures. *See* 42 U.S.C. § 1983. It is

---

[3]The Court notes that "Plaintiff agrees . . . that the gist of her Complaint are the violations of her Constitutional Fourth Amendment Right to be secure in her person, house, papers, and effects, against unreasonable searches and seizures." (Pl.'s Resp. 9.)

9

undisputed that Defendants acted under color of state law in this case.   Therefore, the issue that must be resolved is whether Defendants are liable for the alleged violation of Plaintiff's Fourth Amendment rights when they arrested her.

> A.   Section 1983 Claims Against Defendants in their Individual Capacities

Defendants, in their individual capacities, assert qualified immunity as a complete defense to Plaintiff's claims.   Qualified immunity shields public officers acting within the scope of their discretionary authority from liability so long as their acts do not violate clearly established law. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).   "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and internal quotation marks omitted).

To receive qualified immunity, an officer must preliminarily show that "he was acting within the scope of his discretionary authority" when the allegedly wrongful acts occurred. *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009).   Here, Plaintiff does not dispute that Defendants were acting within their discretionary authority during the events giving rise to this action.   Therefore, the burden shifts to Plaintiff to show that Defendants' conduct

violated Plaintiff's Fourth Amendment rights which were well established at the time of the alleged conduct. *Id.* at 1325.

In this case, Plaintiff alleges that her Fourth Amendment rights were violated based upon her being subjected to: (1) false arrest, (2) false imprisonment, (3) malicious prosecution, (4) excessive force, and (5) an illegal vehicle search.

> 1. *False Arrest, False Imprisonment, and Malicious Prosecution*

Plaintiff's Fourth Amendment claims arising from her alleged false arrest, false imprisonment, and malicious prosecution are all based on her contention that Defendants did not have probable cause to stop and arrest her. An arrest without probable cause would violate Plaintiff's Fourth Amendment right to be free from an unreasonable search. *See Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003). Subsequent detention and prosecution without probable cause could likewise give rise to claims of false imprisonment and malicious prosecution. *See Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996); *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Storck*, 354 F.3d at 1314 (internal quotation marks omitted).

For purposes of determining whether Defendants are entitled to qualified immunity, the issue is whether they had *arguable* probable cause to arrest Plaintiff. "[A]ll that is required for qualified

immunity to be applicable to an arresting officer is *arguable* probable cause to believe that a person is committing a particular public offense[.]" *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (per curiam) (internal citation and quotation marks omitted). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[s] could have believed that probable cause existed to arrest." *Lee*, 284 F.3d at 1195 (internal quotation marks omitted). "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).

Whether an arresting officer possesses probable cause (or arguable probable cause) "depends on the elements of the alleged crime and the operative fact pattern." *Id.* at 1137-38 (citation omitted). Here, Plaintiff was arrested for violating O.C.G.A. § 40-2-41 and O.C.G.A. § 40-6-74. If Defendants possessed arguable probable cause to arrest Plaintiff for either, Defendants are entitled to qualified immunity. *See id.* at 1138.

O.C.G.A. § 40-2-41 provides,

It shall be the duty of the operator of any vehicle to keep the license plate legible at all times. No license plate shall be covered with any material unless the material is colorless and transparent. No apparatus that obstructs or hinders the clear display and legibility of a license plate shall be attached to the rear of any motor vehicle required

> to be registered in the state.  Any person who violates any
> provision of this Code section shall be guilty of a
> misdemeanor.

Here, Plaintiff had a plastic cover over her license plate that was
bordered with a non-transparent, chrome frame.  (*See* Ex. A to Pl.'s
Dep.)  Although the facts viewed in the light most favorable to
Plaintiff reveal that the plastic cover did not have tint (Pl.'s Dep.
50:13-51:5), Corporal Fuller nevertheless had to "pull[] next to the
vehicle in order to read the tag number" because he was unable to
read it clearly (Incident Report at 0002).  Regardless of whether the
plastic cover was tinted, its dirty surface prevented Corporal Fuller
from reading Plaintiff's tag number clearly, and thus, based on the
present record, Corporal Fuller had at least arguable probable cause
to arrest Plaintiff for violating O.C.G.A. § 40-2-41.  *See, e.g.,*
*Nelson v. State,* 247 Ga. App. 455, 456, 544 S.E.2d 189, 190 (2001)
(noting that black, non-transparent border around tag which obscured
state name violated O.C.G.A. § 40-2-41); *Knight v. State*, 234 Ga.
App. 359, 359, 506 S.E.2d 245, 246 (1998) (finding clear evidence of
violation of O.C.G.A. § 40-2-41 where license plate "was heavily
obscured by a smoky covering"); *but see State v. Aguirre*, 229 Ga.
App. 736, 738, 494 S.E.2d 576, 578 (1997) (concluding no violation of
O.C.G.A. § 40-2-41 where clear plastic cover over tag had no adverse
effect on legibility of tag).

Defendants argue that even if they did not have arguable
probable cause to arrest Plaintiff under O.C.G.A. § 40-2-41, they did

have at least arguable probable cause to arrest her under O.C.G.A. § 40-2-6.1 and O.C.G.A. § 40-6-395(a).   The Court agrees.   The fact that Defendants did not cite O.C.G.A. § 40-2-6.1 or O.C.G.A. § 40-6-395(a) on the arrest report is irrelevant to the Court's inquiry of whether Defendants had arguable probable cause to arrest Plaintiff because "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Lee*, 284 F.3d at 1195-96 (alteration in original) (internal quotation marks omitted).   Thus, "[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *Id.* at 1196 (alteration in original) (internal quotation marks omitted).

O.C.G.A. § 40-2-6.1 provides,

> Any person who willfully covers any license plate with plastic, other material, or any part of his or her body in order to prevent or impede the ability of surveillance equipment to clearly photograph or otherwise obtain a clear image of the license plate is guilty of a misdemeanor and shall be punished by a fine not to exceed $1,000.00.

Here, it is undisputed that Plaintiff had a plastic cover over her license plate.   (Pl.'s Dep. 23:20-25.)   Therefore, the Court finds that Defendants had at least arguable probable cause to arrest Plaintiff for violating O.C.G.A. § 40-2-6.1.   *See, e.g., Thomas v. State*, 289 Ga. App. 161, 161-62, 657 S.E.2d 247, 248-49 (2008) (finding that officer's observation that plaintiff's car tag was

14

covered in plastic in violation of O.C.G.A. § 40-2-6.1 made traffic stop valid).

The Court also finds that Defendants had at least arguable probable cause to arrest Plaintiff for violating O.C.G.A. § 40-6-395(a), which provides,

> It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle.

Here, Plaintiff drove four minutes and approximately three miles with Corporal Fuller in pursuit before coming to a complete stop. (Fuller Dash-Cam Video at 12:35:20-12:39:20.) Therefore, the Court finds that Defendants had at least arguable probable cause to arrest Plaintiff for violating O.C.G.A. § 40-6-395(a). *See, e.g., Finlon v. State*, 228 Ga. App. 213, 213, 491 S.E.2d 458, 459 (1997) (finding sufficient evidence for violation of O.C.G.A. § 40-6-395(a) where officer was on patrol in a marked squad car and followed driver for over three miles with siren and blue lights flashing before driver stopped).

For all of these reasons, the Court finds that Defendants, in their individual capacities, are entitled to qualified immunity as to Plaintiff's § 1983 false arrest claim. Likewise, since Defendants possessed at least arguable probable cause to arrest Plaintiff,

Plaintiff's claims based upon her subsequent detention and prosecution also fail.

### 2. Excessive Force

Plaintiff next contends that Defendants violated her Fourth Amendment rights when they allegedly used excessive force during her arrest. This claim must be analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Conner*, 490 U.S. 386, 395, 399 (1989).

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.

*Id.* at 396 (citations and internal quotation marks omitted). The Eleventh Circuit evaluates an officer's use of force objectively by considering several factors: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Jackson v. Sauls*, 206 F.3d 1156, 1170 n.18 (11th Cir. 2000) (internal quotation marks omitted).

Plaintiff contends that Corporal Fuller and Deputy Englett used excessive force when they pulled her over, directed her out of her vehicle and onto the ground with a gun pointed at her, and handcuffed

16

her in a rough manner. (Pl.'s Resp. 13.) The Court finds, however, that, under the exigencies of the situation, the officers did not use excessive force. The Eleventh Circuit has held that "an officer's drawing a weapon and ordering a person stopped to lie on the ground does not necessarily constitute excessive force during an investigatory stop." *Jackson*, 206 F.3d at 1171-72; *see, e.g., id.* (finding that plaintiffs had failed to show excessive force during investigatory stop where officer pointed gun and ordered plaintiffs to lie on ground); *Courson v. McMillian*, 939 F.2d 1479, 1494-95 (11th Cir. 1991) (same). Furthermore, although Plaintiff asserts that the handcuffs caused bruising and swelling to her wrists (*see* Pl.'s Dep. 47:25-49:22; *see also* Ex. D to Pl.'s Dep.), Plaintiff failed to point the Court to any evidence that would lead a reasonable factfinder to conclude that she complained of any discomfort while she was handcuffed. Therefore, the Court finds that "[t]he minor nature of this injury reflects that minimal force was used to apply the handcuffs." *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (per curiam) (finding no excessive force where defendant experienced pain from handcuffs for twenty minutes and suffered skin abrasions for which he did not seek medical treatment). Accordingly, the Court finds that Defendants, in their individual capacities, are entitled to qualified immunity as to Plaintiff's § 1983 excessive force claim.

17

### 3.   Illegal Search of Plaintiff's Vehicle

Finally, Plaintiff contends that the inventory search of her vehicle after she was arrested violated her Fourth Amendment rights. The Supreme Court has held that searches and seizures conducted absent a search warrant granted by a judicial officer are *per se* unreasonable under the Fourth Amendment unless they fall within a limited set of well-defined exceptions. *See Katz v. United States*, 389 U.S. 347, 357 (1967).  One exception covers inventory searches. *See Illinois v. Lafayette*, 462 U.S. 640, 643 (1983).  This inventory search exception provides,

> Even if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard, a law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of something other than suspicion of evidence of criminal activity.  If the vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria.

*Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992) (internal quotation marks omitted).  There are three interests that justify the inventory search exception: (1) "protection of the owner's property which may be stored in the vehicle;" (2) "protection of the police from false claims of lost possessions;" and (3) "protection of the police from potential danger." *United States v. Staller*, 616 F.2d 1284, 1289 (5th Cir. 1980).[4]  "[I]f an inventory search is otherwise

_____

[4]In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of

reasonable, its validity is not vitiated by a police officer's suspicion that contraband or other evidence may be found." *Id.* at 1290. However, the inventory search "must be limited to effectuation of the recognized purposes for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible." *United States v. Prescott*, 599 F.2d 103, 105 (5th Cir. 1979).

Here, the Court finds that Corporal Fuller performed a proper inventory search of Plaintiff's car after she was arrested pursuant to Greene County's policy of conducting an inventory of an arrestee's personal property. Although Plaintiff contends that the inventory search violated her Fourth Amendment rights because it "was really done for investigatory purposes in the hope of discovering evidence of a crime" (Pl.'s Resp. 15), the Court finds that "[t]he fact that [Corporal Fuller] may have expected to find incriminating evidence in [Plaintiff's] car does not affect the validity of this search," *United States v. Grossman*, 233 F. App'x 963, 968 (11th Cir. 2007) (per curiam); *see id.* (finding that items seized from defendant's vehicle were admissible under inventory search exception even though agents believed that incriminating evidence might be found in defendant's vehicle). Furthermore, although Plaintiff contends that her Fourth Amendment rights were violated when Corporal Fuller searched her closed luggage in the trunk of her vehicle (Pl.'s Resp.

---

business on September 30, 1981.

13), "[c]losed containers may be opened during a personal effects inventory," (Search & Seizure at 4).   Therefore, the Court finds that the inventory search of Plaintiff's vehicle was proper and did not violate Plaintiff's Fourth Amendment rights.   Accordingly, Defendants, in their individual capacities, are entitled to summary judgment as to this claim.

    **B.**    <u>Section 1983 Claims Against Defendant Sheriff Chris Houston in His Official Capacity</u>

Although Plaintiff brings § 1983 claims against all Defendants in their official capacities, these claims are treated as claims against Defendant Sheriff Chris Houston in his official capacity. *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n.2 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent[.]" (internal punctuation omitted)); *see also Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007) (per curiam) (holding that employees of sheriff, in their official capacities, were entitled to Eleventh Amendment immunity).

Sheriff Houston contends that he is entitled to summary judgment as to all of Plaintiff's § 1983 constitutional claims based upon Eleventh Amendment immunity.   Plaintiff does not dispute that her § 1983 claims against Sheriff Houston fail as a matter of law.   (Pl.'s Resp. 16.)   The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well settled that Eleventh Amendment immunity bars suits brought in federal court when an "arm of the State" is sued. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc).

"Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id*. A Georgia sheriff is considered an arm of the State when he engages in the law enforcement function of arresting citizens for violations of state law. *See, e.g., Mladek v. Day*, 293 F. Supp. 2d 1297, 1304 (M.D. Ga. 2003) (concluding that county sheriff wore "state hat" at time of plaintiff's arrest and subsequent detention); *see also Manders*, 338 F.3d at 1310, 1313. Accordingly, Sheriff Houston is entitled to immunity, and therefore, summary judgment as to all of Plaintiff's § 1983 claims.

C.    Section 1983 Claims Against Defendant Greene County

Plaintiff also asserts § 1983 claims against Greene County. A county is liable when the county's "official policy" causes a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To prevail against Greene County, Plaintiff must establish that she suffered a constitutional deprivation pursuant to "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of

21

a final policymaker for the county." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc); *see Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 713 (11th Cir. 1992) (per curiam).

Here, Plaintiff does not dispute that her § 1983 claims against Greene County fail as a matter of law. (Pl.'s Resp. 16.)  Even if Plaintiff suffered a constitutional deprivation, Greene County would nevertheless be entitled to summary judgment.  Here, for Greene County to be responsible for Sheriff Houston's policies and/or customs, Sheriff Houston must have been acting at the time as the final policymaker for Greene County.  Plaintiff has pointed to no evidence that Sheriff Houston was a policymaker.  Thus, Greene County would not be responsible for Sheriff Houston's law enforcement policies.  Therefore, Defendant Greene County is entitled to summary judgment as to Plaintiff's § 1983 claims.  Accordingly, the Court finds that all Defendants are entitled to summary judgment as to Plaintiff's § 1983 claims.[5]

## II.  Plaintiff's State Law Claims

Plaintiff brings several claims under Georgia law against Defendants.  For the following reasons, all Defendants are entitled to summary judgment as to these claims.

---

[5]Because all of Plaintiff's § 1983 claims fail as a matter of law, Plaintiff's claim for attorney's fees under 42 U.S.C. § 1988 also fails as a matter of law.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (stating that no recovery exists under 42 U.S.C. § 1988 where defendant prevails either because of legal immunity or on the merits).

A.   <u>Defendant Greene County</u>

The Court finds that Greene County is entitled to summary judgment as to Plaintiff's state law claims. "A county is not liable to suit for any cause of action unless made so by statute." O.C.G.A. § 36-1-4; *see also Williams v. Whitfield County*, 289 Ga. App. 301, 302, 656 S.E.2d 584, 586 (2008) ("The immunity, at least for counties, may only be waived by a legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver."); *Swan v. Johnson*, 219 Ga. App. 450, 452, 465 S.E.2d 684, 686 (1995) ("[C]ounties have not waived their sovereign immunity and will retain immunity until it is waived by an act of the General Assembly."). In this case, because there is no statute authorizing a cause of action against Greene County, the Court finds that Greene County is entitled to summary judgment as to Plaintiff's state law claims.[6]

B.   <u>Defendants in their Official Capacities</u>

The Court also finds that Defendants, in their official capacities, are entitled to summary judgment as to Plaintiff's state law claims. A county sheriff may be held liable for a deputy's negligence in performing a ministerial or discretionary function only if the county has waived its sovereign immunity. *Seay v. Cleveland*, 270 Ga. 64, 65, 508 S.E.2d 159, 160 (1998); *Howard v. City of*

---

[6]The Court notes that the Georgia Tort Claims Act, O.C.G.A. § 50-21-20 *et eq.*, specifically excludes tort suits against counties. *See Swan*, 219 Ga. App. at 452, 465 S.E.2d at 686-87.

*Columbus*, 239 Ga. App. 399, 410, 521 S.E.2d 51, 65 (1999).  Thus, because Greene County has not waived its sovereign immunity, Defendants, in their official capacities, are entitled to summary judgment as to Plaintiff's state law claims.

    C.   <u>Defendants in their Individual Capacities</u>

    Lastly, the Court finds that Defendants, in their individual capacities, are entitled to summary judgment as to all of Plaintiff's state law claims because they have official immunity.  "[S]tate officers and employees and those of its departments and agencies are subject to suit only when they negligently perform or fail to perform their 'ministerial functions' or when they act with actual malice or intent to cause injury in the performance of their 'official functions.'" *Gilbert v. Richardson*, 264 Ga. 744, 752-53, 452 S.E.2d 476, 483 (1994) (quoting Ga. Const. art. I, § II, ¶ IX(d)). "Generally, a ministerial act is one that 'is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.'" *Meagher v. Quick*, 264 Ga. App. 639, 642, 594 S.E.2d 182, 185 (2003) (quoting *Stone v. Taylor*, 233 Ga. App. 886, 888, 506 S.E.2d 161, 163 (1998)). On the other hand, a discretionary task is one which "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Stone*, 233 Ga. App. at 888, 506 S.E.2d at 163 (internal quotation marks omitted).

Here, Defendants clearly engaged in discretionary functions when they conducted a traffic stop, arrested Plaintiff, and conducted an inventory search of her vehicle.   Therefore, in this case, unless Plaintiff can show that the officers acted with actual malice, Defendants are immune from liability.   In the context of official immunity, "'actual malice' requires a deliberate intention to do wrong." *Merrow v. Hawkins*, 266 Ga. 390, 391, 467 S.E.2d 336, 337 (1996).   Here, Plaintiff has failed to point the Court to any evidence from which a reasonable factfinder could conclude that Defendants acted with actual malice.   Therefore, the Court finds that Defendants, in their individual capacities, are entitled to summary judgment as to Plaintiff's state law claims.   Accordingly, all Defendants are entitled to summary judgment as to all of Plaintiff's state law claims.[7]

CONCLUSION

As discussed above, the Court finds that Defendants are entitled to summary judgment as to all of Plaintiff's claims.   Accordingly, Defendants' Motion for Summary Judgment (Doc. 17) is granted.

---

[7]Because all of Plaintiff's state law claims fail as a matter of law, Plaintiff's claim for attorney's fees under state law also fails as a matter of law. *See Gardner v. Kinney*, 230 Ga. App. 771, 772, 498 S.E.2d 312, 313 (1998) ("O.C.G.A. § 13-6-11 does not create an independent cause of action.   That statue merely establishes the circumstances in which a plaintiff may recover the expenses of litigation as an additional element of [her] damages." (internal quotation marks omitted)).

IT IS SO ORDERED, this 9th day of December, 2009.


                              S/Clay D. Land
                                CLAY D. LAND
                          UNITED STATES DISTRICT JUDGE